## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

UNITED STATES OF
AMERICA, *ex rel.*
[UNDER SEAL],

Plaintiffs,

v.

[UNDER SEAL]

Defendant.

Civil No. 1-20-cv-231
AW GRJ

Filed Under Seal Pursuant to
31 U.S.C. § 3730(b)(2)

### COMPLAINT AND JURY DEMAND

# FILED UNDER SEAL

# NOT TO BE FILED
# ON PACER

FILED USDC FLND GV
SEP 14 '20 PM12:09

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| Plaintiff, | **Civil No.** _____ |
| *ex rel.* | **COMPLAINT** |
| **ANDREW HERSH.** | **Jury Trial Demanded** |
| Relator, | **Filed Under Seal Pursuant to 31 U.S.C. § 3730(b)(2)** |
| v. | |
| **PATRICK WALSH,** | |
| **AMERICAN BLIMP COMPANY LLC,** | |
| **WALSH FAMILY LAND CORP.,** | |
| **AIRSIGN, INC.,** | |
| **AIRSIGN AIRSHIP GROUP, LLC,** | |
| **AIRSIGN GROUP LLC,** | |
| **AIRSIGN AIRSHIPS LATIN AMERICA, LLC,** | |
| **AIRSIGN AIRSHIPS ASIA PACIFIC, LLC** | |
| **AIRSIGN AIRSHIPS REPAIR STATION, LLC,** | |

2

**AERO CAPITAL LLC,**

**EAGLE RIDGE MANAGEMENT GROUP, LLC,**

**SHILOH OIL COMPANY LLC,**

**Defendants.**

## COMPLAINT AND JURY DEMAND

1. Relator Andrew Hersh, through his undersigned attorneys and on behalf of the United States of America ("United States" or "Government"), brings this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), against Defendant Patrick Walsh and various entities that Defendant Walsh owns and controls. Defendants knowingly submitted or caused to be submitted false and fraudulent applications for Paycheck Protection Program (PPP) and Economic Injury Disaster Loans (EIDL) loans administered by the Small Business Administration (SBA). Defendants submitted multiple PPP applications for different companies using falsified documents based on the same underlying payroll information, and made false statements as to the number of employees and amount of payroll of the various entities in order to fraudulently obtain funds intended for small businesses

3

suffering economic harm due to the Covid-19 pandemic. Defendant Walsh then appropriated these funds for his own personal use, funneling the loans into new business ventures, paying off old personal debts, and siphoning PPP loan money to his immediate family members by falsely paying them salaries as if they were actual employees.

2.     The PPP loan program was instituted to prevent job losses and wage cuts caused by the Covid-19 pandemic and economic shutdown. A small business may apply for a PPP loan from an authorized lender that is fully guaranteed by the SBA and forgivable if certain conditions are met.

3.     Defendant Walsh and the Defendant entities falsely certified on their PPP loan applications the number of employees, the average payroll, the intended use of the loans, and that the companies were in operation and employing people on the date required by the program. In order to receive PPP loans, Defendants submitted doctored payroll sheets and fraudulent IRS Form 941s to participating lenders.

4.     Defendant Walsh rushed to manufacture fraudulent PPP loan packages for any entities that he controlled, apparently duping various banks in the process. Defendant Walsh used his corporate

4

entities interchangeably to mislead PPP lenders and spend the PPP

loans. Upon receipt of PPP loans, he did not maintain separate

corporate forms or accounts. Instead, he used the loans as a giant slush

fund for any purpose he chose, often himself.

5. Defendant Walsh did not spend the PPP loans on salaries –

unsurprising as almost all the entities had no employees. Instead, he

spent the disbursed PPP loan funds on unallowable expenses. As soon

as loan money came in, Defendant Walsh went on a personal spending

spree. He purchased oil wells in Texas, he added his wife and son to the

payrolls of multiple Defendant entities, and he settled multiple personal

debts.

## I. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction action under 28

U.S.C. § 1331 and 31 U.S.C. § 3732. This Court has personal

jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) and

because Defendants transacted business and committed acts proscribed

by 31 U.S.C. § 3729 in this District. Venue is proper under 31 U.S.C.

§ 3732(a) and 28 U.S.C. § 1391(b).

7.     As required by 31 U.S.C. § 3730(b)(2), a written disclosure of

substantially all material evidence and information in Relator's

possession was served on the Government prior to this filing. Relator

delivered material evidence and information to the SBA, and the United

States Attorney for the Northern District of Florida. Relator made a

previous disclosure to the SBA and Secret Service on July 22, 2020.

Relator continued to disclose documents to the SBA and Secret Service

throughout July and August.

8.     This suit is not based upon prior public disclosures of

allegations or transactions as defined under 31 U.S.C. § 3730(e)(4)(A).

To the extent a public disclosure occurred, Andrew Hersh is an original

source under 31 U.S.C. § 3730(e)(4)(B). Relator Hersh possesses direct

and independent knowledge of the Complaint's allegations and

voluntarily and affirmatively disclosed them to the United States

Government before filing this Complaint.

## II.    THE PARTIES

9.     Relator Andrew Hersh works under the direct supervision of

Patrick Walsh, providing various services including technical and

6

internet support, and email administration services. Hersh is a resident of Pennsylvania.

10.    Defendant Patrick Walsh is a resident of Williston, Florida.

11.    Defendant American Blimp Company LLC is a Smyrna, Tennessee company that sells blimp advertisements. Defendant Walsh owns and controls American Blimp Company. The company's principal place of business is 12 NW 5th Place, Williston, Florida.

12.    Defendant Walsh Family Land Corp is a Williston, Florida company owned and controlled by Defendant Walsh. The company's principal address is 12 NW 5th Place, Williston, Florida.

13.    Defendant Airsign, Inc. is a Williston, Florida company owned and controlled by Defendant Walsh. The company's principal address is 12 NW 5th Place, Williston, Florida.

14.    Defendant Airsign Airship Group, LLC is a Williston, Florida company owned and controlled by Defendant Walsh. The company's principal address is 12 NW 5th Place, Williston, Florida.

15.    Defendant Airsign Group LLC is a Williston, Florida company owned and controlled by Defendant Walsh. The company's principal address is 12 NW 5th Place, Williston, Florida.

7

16.     Defendant Airsign Airships Latin America, LLC is a

Williston, Florida corporation owned and controlled by Defendant

Walsh. The company's principal address is 12 NW 5th Place, Williston,

Florida.

17.     Defendant Airsign Airships Asia Pacific, LLC is a Williston,

Florida company owned and controlled by Defendant Walsh. The

company's principal address is 12 NW 5th Place, Williston, Florida.

18.     Defendant Airsign Airships Repair Station, LLC is a

Williston, Florida company owned and controlled by Defendant Walsh.

The company's principal address is 12 NW 5th Place, Williston, Florida.

19.     Defendant Eagle Ridge Management Group LLC is a

Wyoming company owned and controlled by Defendant Walsh. The

company's principal office address and mailing address is 12 NW 5th

Place, Williston, Florida.

20.     Defendant Aero Capital LLC is a Williston, Florida company

owned and controlled by Defendant Walsh. The company's principal

address is 12 NW 5th Place, Williston, Florida.

21.     Defendant Shiloh Oil Company is a Wyoming company

owned and controlled by Defendant Walsh. The company's principal

8

office and mailing address is 5830 E 2nd St. STE 7000 #1820 Casper,
Wyoming.

## III. APPLICABLE LAW

### a. The Paycheck Protection Program

22. The Paycheck Protection Program (PPP) is a program
created by the Coronavirus Aid, Relief, and Economic Security (CARES)
Act, enacted in March 2020 in response to the Covid-19 pandemic. The
CARES Act authorized $349 billion in forgivable and fully guaranteed
loans to small businesses under the PPP, in order to maintain
employment and wages and offset the economic shutdown resulting
from the Covid-19 pandemic. In addition to PPP, the CARES Act
created the Economic Injury Disaster Loans (EIDL) program which
provides non-forgivable loans directly from SBA to meet obligations and
expenses that could have been met if the Covid-19 pandemic had not
occurred. In April 2020, Congress authorized an additional $300 billion
in PPP funding after the program was depleted.

23. The PPP loan is calculated by multiplying the average
monthly payroll of the applying entity by 2.5, plus any Economic Injury
Disaster Loans received by the applying entity. The applying entity

must certify additional information including the number of employees,
that the entity was in operation on February 15, 2020 and had
employees for whom it paid payroll taxes, that current economic
uncertainty makes the loan request necessary to support the ongoing
operation of the applicant, and that the funds will be used by the
applying entity to retain its workers and maintain payroll or make
mortgage interest payments, lease payments, and utility payments
owed by the applying entity.

24.    In order to obtain a PPP loan, entities must submit a PPP
loan application (SBA Form 2483), which is signed by an authorized
representative of the entity. The application requires the applicant
(through its authorized representative) to affirm that "[t]he [PPP loan]
funds will be used to retain workers and maintain payroll or make
mortgage payments, lease payments, and utility payments."

25.    In the PPP loan application, the entity (through its
authorized representative) must state, among other things, its: (a)
average monthly payroll expenses; and (b) number of employees. These
figures are used to calculate the loan the entity is eligible to receive

under the PPP. The entity must submit payroll documentation to the participating lender which show its payroll expenses.

26.    The business must also certify that it was in operation on February 15, 2020 and had employees for whom it paid taxes.

27.    A PPP loan application is processed by a participating lender and then approved by the SBA. Information certified by the applying entity is transmitted by the lender to the SBA prior to approval. If the loan is approved, the participating lender funds the PPP loan at a one percent (1%) interest rate, but the loan is fully guaranteed by the SBA.

28.    PPP loan proceeds may only be used by the business on certain permissible expenses including payroll costs, interest on mortgage obligations and debts incurred by the entity before the covered period, rent, and utilities.

29.    In order for the loan to qualify for Government forgiveness, proceeds must be spent on payroll. For the loan to be entirely forgiven, at least 75% must be spend on payroll.

**b.    The False Claims Act**

30.    The False Claims Act provides that any person who knowingly presents or causes another to present a false or fraudulent

11

claim to the Government for payment or approval is liable for a civil penalty for each false claim or statement and three times the amount of the damages sustained by the Government. The Act also creates liability for any person who knowingly makes or uses false records or statements that are material to a claim for payment, or who conspires to commit these acts or other acts for which there is False Claims Act liability. 31 U.S.C. § 3729(a)(1)(A)-(C).

31. The False Claims Act's whistleblower provisions allow a person who has information regarding a false or fraudulent claim against the Government to bring an action for himself and on behalf of the United States, and to share in any recovery.

## IV. FACTUAL ALLEGATIONS

### a. PPP Applications

32. Prior to the Covid-19 pandemic, Defendant Walsh and his companies were struggling financially. Following the passage of the CARES Act, Relator had a conversation with Mr. Walsh where Walsh referred to PPP loans as "free money" and "grants."

33. In order to fraudulently obtain as much PPP loan money as possible, Mr. Walsh raced to file applications. Mr. Walsh owns and

12

controls numerous corporate entities that do not employ any individuals. They are failed businesses ventures or empty shells that were inactive prior to the passage of the CARES Act. Mr. Walsh altered payroll documents to trick lenders and the SBA into approving PPP loans.

34. In addition to applying for PPP loans, Mr. Walsh used a similar scheme to apply for numerous EIDL loans, including fraudulent loans purportedly from his wife, and companies she purportedly directs, but also have no employees and are not in operation.

35. On April 30, 2020, Mr. Walsh and several of the corporate Defendants filed reinstatement documents with the Florida Division of Corporations. Prior to reinstatement, these companies had been inactive and were reinstated for the purpose of filing fraudulent PPP loan applications on their behalf. Mr. Walsh filed reinstatement documents for: Walsh Family Land Corp, Airsign Airships Latin America, Airsign Airships Asia Pacific, and Airsign Airships Repair Station. These companies did not have any employees prior to the passage of the CARES Act.

13

36.    Mr. Walsh repeatedly directed a February payroll sheet for American Blimp Company be doctored. Mr. Walsh directed the company name to be altered to one of his various other sham entities. One payroll document was changed to a generic "Airsign" name. This document was then repeatedly altered for different Defendant entities with "Airsign" in their name.

37.    Mr. Walsh had the company name on the payroll sheet altered to Aero Capital and then altered to Walsh Family Land Corp. Neither Aero Capital nor Walsh Family Land Corp had any employees at this time.

38.    Mr. Walsh also had the payroll data altered. Mr. Walsh stated that he did not care what the listed employees were actually paid, just that the concocted total amount of payroll, Social Security tax and federal income tax were equal to a specific number.

39.    Mr. Walsh used these documents to apply for PPP loans on behalf of these companies.

40.    Mr. Walsh submitted PPP loan applications for the Defendant entities to different authorized lenders in an effort to conceal

14

that he was submitting multiple applications for the same companies or based on the same underlying payroll.

41. Entities owned and controlled by Mr. Walsh applied for and received[1] at least the following PPP loans:

a. Defendant American Blimp Company received a $917,000 PPP loan from Celtic Bank Corporation. To obtain its PPP loan, Defendant American Blimp Company fraudulently represented its number of employees and average monthly payroll.

b. Defendant Walsh Family Land Corp received a PPP loan of between $150,000 and $350,000 from Celtic Bank Corporation. Defendant Walsh Family Land Corp fraudulently represented its number of employees and average monthly payroll.

c. Defendant Airsign, Inc. received a PPP loan of between $150,000 and $350,000 from Trustmark National Bank. Mr. Walsh also received a loan for an "Airsign Inc." (without a

_____

[1] Relator can confirm that PPP loans were received for all entities except Aero Capital.

15

comma). "Airsign Inc." received a PPP loan from Newtek
SBF of between $350,000 and $1 million. Defendant Airsign,
Inc. and "Airsign Inc." fraudulently represented its number
of employees and average monthly payroll.

d. Defendant Airsign Airships Group received a PPP loan of
between $350,000 and $1 million from First Home Bank.
Defendant Airsign Airships Group was not in operation and
did not have any employees when its PPP loan application
was submitted.

e. Defendant Airsign Group LLC received a PPP loan of
between $350,000 and $1 million from Renasant Bank.
Defendant Airsign Group LLC was not in operation and did
not have any employees when its PPP loan application was
submitted.

f. Defendant Airsign Airships Latin America received a
$1,002,000 PPP loan from Fountainhead SBF LLC.
Defendant Airsign Airships Latin America was not in
operation and did not have any employees when its PPP loan
application was submitted.

16

g. Defendant Airsign Airships Asia Pacific received a \$502,297 PPP loan from Liberty SBF. Defendant Airsign Airships Asia Pacific was not in operation and did not have any employees when its PPP loan application was submitted.

h. Defendant Airsign Airships Repair Station received a \$1,038,808 PPP loan from Harvest SBF. To obtain its PPP loan, Defendant Airsign Airships Repair Station fraudulently represented its number of employees and average monthly payroll.

i. Defendant Aero Capital applied for a PPP loan. Defendant Aero Capital was not in operation and did not have any employees when its PPP loan application was submitted.

42. Mr. Walsh also submitted applications for numerous fraudulent EIDL loans under a similar scheme. For example, Mr. Walsh applied for EIDL loans for Defendants Aero Capital and Eagle Ridge Management with the fraudulently altered payroll documents.

43. Additionally, Mr. Walsh applied for EIDL loans under his wife's name. None of the companies Mr. Walsh applied for EIDL loans in his wife's name have any employees or are in operation.

17

44. Each PPP loan application certified that the entity was in operation on February 15, 2020 with employees for whom the entity had paid payroll taxes.

45. On each PPP loan application, Defendant Walsh listed a false number of employees and false average monthly payroll.

46. To support each PPP loan application, Defendant Walsh submitted false and fraudulent payroll documentation.

47. On each PPP loan application, Defendant Walsh on behalf of the applying entity certified that the loan would be used by the entity to retain its employees and maintain payroll or employee health benefits, and make mortgage interest payments, lease payments, and utility payments owed by the entity. As discussed below, Defendant Walsh and the corporate Defendants did not use the PPP loan funds for these allowable uses.

## b. Fraudulent Use of PPP Loan Proceeds

48. Instead of using the PPP loan funds for the uses permitted by the CARES Act, Mr. Walsh redirected the money to profit himself and his family. Mr. Walsh used the PPP loan funds to pay off old personal debts, added his immediate family members to the payroll of

18

his companies and paid them amounts well in excess of $100,000 within a few months, increased his own compensation, and invested in various new business ventures.

49. Throughout May and June, Defendant Walsh wired hundreds of thousands of dollars from the PPP funds he had received to various individuals. Defendant Walsh sent numerous six-figure wires, including for $300,000, $182,439.04, and $148,154.64.

50. Between May 7, 2020 and July 10, 2020, Defendant Walsh put his wife, Hannah Walsh, on the payroll of multiple Defendant companies. Ms. Walsh was paid at least $157,692.15 between May 7 through July 10. Ms. Walsh is not an actual employee and does not perform work at any Defendant entities.

51. Between April 24 and July 3, 2020, Defendant Walsh paid himself $146,153.70.

52. In the end of July, Defendant Walsh added his son, Adrian Walsh, to the payroll of one Defendant corporate entities. He was paid $1,153.85 in the first pay period he was eligible.

53. On July 22, 2020, Defendant Walsh updated the corporate registration of Eagle Ridge Management Group in order to facilitate the

purchase of a ranch in Wyoming. Defendants Walsh and Eagle Ridge Management wired $100,000 to initiate the purchase of the ranch with funds from PPP loans.

54. Defendant Walsh established Shiloh Oil Company in Wyoming to purchase oil wells using funds from the PPP loans. He has wired at least $275,000 to Estacado Energy LLC to facilitate this purchase.

## V. CLAIMS FOR RELIEF

### COUNT I
### False Claims Act – Presentment of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

55. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

56. Through the acts described above and otherwise, Defendants and their agents and employees knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

57. As a result of Defendants' conduct, the United States has been damaged in an amount to be determined at trial, and is also entitled to statutory penalties.

20

## COUNT II
## False Claims Act – Making or Using False Records or Statements Material to a False Claims
## 31 U.S.C. § 3729(a)(1)(B)

58. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

59. Through the acts described above and otherwise, Defendants and their agents and employees knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

60. As a result of Defendants' conduct, the United States has been damaged in an amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT III
## False Claims Act – Conspiracy
## 31 U.S.C. § 3729(a)(1)(C)

61. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

62. Through the acts described above and otherwise, Defendants entered into a conspiracy or conspiracies to defraud the United States by getting false or fraudulent claims allowed or paid in violation of 31 U.S.C. § 3729(a)(1)(C).

21

63.    Defendants and their agents and employees have taken substantial steps in furtherance of these conspiracies, *inter alia*, by preparing false records, by submitting claims for reimbursement to the Government for payment or approval, and by directing their agents and personnel not to disclose and/or conceal their fraudulent practices.

64.    The United States, unaware of Defendants' conspiracy or the falsity of the records, statements, and claims made by Defendants, their agents and employees, and as a result thereof, has paid money that it would not otherwise have paid. As a result of Defendants' conduct, the United States has been damaged in an amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT IV
### False Claims Act – Making or Using False Record or Statement to Conceal, Avoid and/or Decrease Obligation to Repay Money
### 31 U.S.C. § 3729(a)(7), 31 U.S.C. § 3729(a)(1)(G)

65.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

66.    Through the acts described above, in violation of 31 U.S.C. § 3729(a)(7) and as amended, 31 U.S.C. § 3729(a)(1)(G), Mr. Walsh and his Defendant entities knowingly made, used, or caused to be made or

22

used false records or statements to knowingly conceal, or knowingly and improperly avoid, or decrease Mr. Walsh and his Defendant entities' obligation to repay money to the United States Government that Mr. Walsh improperly or fraudulently received. Mr. Walsh and the Defendant entities failed to disclose material facts that would have resulted in substantial repayments to the United States.

## VI. REQUEST FOR RELIEF

WHEREFORE, Relator Andrew Hersh requests that judgment be entered against Defendants ordering that:

1. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*;

2. The Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States has sustained as a result of Defendants' actions, as well as a civil penalty against Defendants for each violation of 31 U.S.C. § 3729, plus any increase as specified by Congress;

3. Relator be awarded the maximum amount allowed pursuant to the False Claims Act, 31 U.S.C. § 3730(d);

23

4.  Relator be awarded all costs and expenses of this action, including

    attorneys' fees, costs, and expenses pursuant to 31 U.S.C.

    § 3730(d);

5.  The United States and Relator recover all such other relief as the

    Court deems just and proper.

## VII.  REQUEST FOR JURY TRIAL

Relator hereby demands a trial by jury.


Date: September 11, 2020          Respectfully submitted,


                                  By: */s/ Adam D. Warden*
                                  Maya Saxena
                                  Joseph E. White, III
                                  Lester Hooker
                                  Adam D. Warden
                                  7777 Glades Road
                                  Suite 300
                                  Boca Raton, FL 33434
                                  Telephone: (561) 394-3399
                                  Facsimile: (561) 394-3382
                                  msaxena@saxenawhite.com
                                  jwhite@saxenawhite.com
                                  lhooker@saxenawhite.com
                                  awarden@saxenawhite.com

                                  Mark Hanna (pro hac forthcoming)
                                  Nicolas F. Mendoza (pro hac
                                  forthcoming)

24

Frederick Turner (pro hac
forthcoming)
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Phone: (202) 223-2620
mhanna@murphypllc.com
nmendoza@murphypllc.com
wturner@murphypllc.com

*Attorneys for Relator Andrew Hersh*

**Extremely Urgent**

This envelope is for use with the following services: **UPS Next Day Air®**
**UPS Worldwide Express®**
**UPS 2nd Day Air®**

**Visit ups.com® or call 1-800-PICK-UPS® (1-800-742-5877)**
**to schedule a pickup or find a drop off location near you.**

**Domestic Shipments**
- To qualify for the Letter rate, UPS Express Envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express Envelopes containing items other than those listed and weighing more than 8 oz. will be billed by weight.

**International Shipments**
- The UPS Express Envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your shipment is classified as a document.

- To qualify for the Letter rate, the UPS Express Envelope must weigh 8 oz. or less. UPS Express Envelopes weighing more than 8 oz. will be billed by weight.

**Note:** Express Envelopes are not recommended for shipments of electronics containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

◄ **Insert shipping documents**
**under window from the top.**



  

**Window Envelope**

Use this envelope with shipping documents printed from a laser or inkjet printer on plain paper.

Serving you for more than 100 years
United Parcel Service.

100% Recycled Fiber
80% Post-Consumer

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

0101951033   1/15  TG   United Parcel Service